**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| BRADLEY BOARDMAN, a Washington Individual Provider;<br>DEBORAH THURBER, a Washington Family Childcare Provider;<br>SHANNON BENN, a Washington Family Childcare Provider; and<br>FREEDOM FOUNDATION, a Washington nonprofit organization;<br><br>*Plaintiffs*,<br><br>v.<br><br>GOVERNOR JAY INSLEE, Governor of the State of Washington;<br>PATRICIA LASHWAY, Director of the Washington Department of Social and Health Services ("DSHS"); and<br>ROSS HUNTER, Director of the Washington Department of Early Learning ("DEL");<br><br>*Defendants*. | No. 3:17-cv-05255<br><br>**COMPLAINT** |

## I. INTRODUCTION

1. This case is about whether the State of Washington may allow private organizations to use

Washington State's ballot initiative process as a vehicle to silence ideological adversaries'

FREEDOM FOUNDATION

Legal@myFreedomFoundation.com
360.956.3482 | myFreedomFoundation.com
WA | PO Box 552, Olympia, WA 98507
OR | 736 Hawthorne Ave NE, Salem OR 97301

constitutionally-protected speech and deny other groups equal protection under the law. Defendants Governor Jay Inslee, Patricia Lashway, and Ross Hunter (together, "Defendants") have facilitated and enforced Initiative 1501 ("I-1501"), which targets the constitutionally protected speech of Plaintiffs Bradly Boardman, Deborah Thurber, Shannon Benn, and the Freedom Foundation (collectively, "Plaintiffs").

2. I-1501 is the culmination of a prolonged battle between two ideologically-opposed groups, Plaintiff Freedom Foundation ("Foundation") and Service Employees International Union ("SEIU") 775 and SEIU 925 (together, "Unions"), and their speech to Washington's Homecare and Childcare Providers (collectively, "Providers"), who receive public subsidies for the care they provide. I-1501 prohibits the release of all Provider information to anyone, except the Unions.[1] Receiving updated Provider lists from the State pursuant to the Washington Public Records Act ("PRA"), RCW 42.56, is essential to engage in direct, one-on-one political speech with Providers.

3. For several years, Plaintiffs have requested and obtained Providers' contact information by submitting public records requests to the Washington Department of Social and Health Services ("DSHS") and the Washington Department of Early Learning ("DEL"). Every Plaintiff requested the records to engage in constitutionally protected speech with Providers. Yet the non-party Unions relentlessly attempted to prevent Plaintiffs from obtaining updated Provider lists, by filing duplicative, frivolous lawsuits and lobbying the Legislature to amend the PRA and make all Provider information inaccessible to Plaintiffs. Failing to permanently halt Plaintiffs' speech, the Unions determined to change the law, themselves. They created and financed I-1501, which eliminated all access to updated Provider lists, thus making it impossible for Plaintiffs to continue communicating with Providers.

---

[1] Part III of I-1501, at issue in this case, is now codified in RCW 42.56.640, RCW 42.56.645, and RCW 43.17.410.

FREEDOM FOUNDATION

Legal@myFreedomFoundation.com
360.956.3482 | myFreedomFoundation.com
WA | PO Box 552, Olympia, WA 98507
OR | 736 Hawthorne Ave NE, Salem OR 97301

4. I-1501 violates the First Amendment and the Fourteenth Amendment of the U.S. Constitution in five ways. **First**, I-1501 violates the Equal Protection Clause because it significantly interferes with Plaintiffs' fundamental rights to freely speak and associate. **Second**, I-1501 violates the Equal Protection Clause because it treats two similarly situated groups differently and was created with animus toward Plaintiffs' speech. **Third**, I-1501 violates the First Amendment because it is viewpoint-discriminatory. **Fourth**, I-1501 violates the First Amendment because it is facially overbroad and acts to prohibit many different constitutionally protected expressive activities. **Fifth**, I-1501 violates the First Amendment because it violates Plaintiffs' freedom of association.

5. Plaintiffs bring this suit to enjoin and declare unconstitutional Part III of I-1501 under the First and Fourteenth Amendments of the U.S. Constitution.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331, because it arises under the First and Fourteenth Amendments to the United States Constitution, 28 U.S.C. § 1343, and because Plaintiffs seek relief under the Civil Rights Act of 1871, 42 U.S.C. § 1983 and § 1988.

7. Pursuant to Rule 65 of the Federal Rules of Civil Procedure, this Court has authority under 28 U.S.C. §§ 2201 and 2202 to grant declaratory relief and other relief for Plaintiffs, including preliminary and permanent injunctive relief.

8. Venue is proper in this Court because the Defendants do business and operate in this district. 28 U.S.C. § 1391(b). Intradistrict assignment to the Tacoma Division is proper because Defendants have offices in Thurston County, Washington. Local Civil Rule 3(d).

## III. PARTIES

9. Plaintiff Bradley Boardman is a Homecare Provider who provides care to his sister-in-law,

FREEDOM
FOUNDATION

Legal@myFreedomFoundation.com
360.956.3482 | myFreedomFoundation.com
WA | PO Box 552, Olympia, WA 98507
OR | 736 Hawthorne Ave NE, Salem OR 97301

1    who is disabled. He resides in Everett, Washington.

2        10. Plaintiff Debbie Thurber is a Childcare Provider residing in Spokane, Washington. She

3    operates a licensed childcare center, in which she has cared for state-subsidized children and

4    intends to do continue doing so. She is also the founder of the Eastern Washington Family

5    Childcare Association.

6        11. Plaintiff Shannon Benn is a Family Childcare Provider residing in Spokane, Washington.

7    She and her husband operate a licensed childcare center, in which she cares for state-subsidized

8    children. Since 2012, Benn has written an e-mail newsletter for Childcare Providers, updating them

9    on events within the childcare profession.

10        12. Plaintiff Freedom Foundation is a 501(c)(3) charitable and educational non-profit

11   organization. It is headquartered in Olympia, Washington.

12        13. Defendant Jay Inslee is Governor of Washington and is sued in his official capacity. As

13   Governor, Defendant Inslee is Washington's chief executive officer. It is his responsibility to

14   properly enforce the laws of Washington. The Governor's office is in Olympia, Washington.

15        14. Defendant Patricia Lashway is the Acting Secretary of DSHS, and is sued in her official

16   capacity. DSHS is the state agency responsible for maintaining updated Homecare Provider lists.

17   The Director's office is in Olympia, Washington.

18        15. Defendant Ross Hunter is the Director of DEL and is sued in his official capacity. DEL is

19   the state agency responsible for maintaining updated Childcare Provider lists. The Director's office

20   is in Olympia, Washington.

21                                **IV. FACTUAL ALLEGATIONS**

22   **A. Homecare and Childcare Providers.**

23        16. Homecare Providers, otherwise known as Individual Providers, provide "personal care or

24

FREEDOM
FOUNDATION
Legal@myFreedomFoundation.com
360.956.3482  |  myFreedomFoundation.com
WA  |  PO Box 552, Olympia, WA 98507
OR  |  736 Hawthorne Ave NE, Salem OR 97301

1  respite care services," to persons who qualify for care assistance from DSHS. RCW

2  74.39A.240(3). Clients or consumers are elderly or disabled persons – often family members of

3  the Providers – who have applied or are currently receiving services from DSHS. WAC 388-106-

4  0010. Personal care services include "physical or verbal assistance with activities of daily living

5  and instrumental activities of daily living due to… functional limitations." *Id.*

6      17. Homecare Providers are public employees solely for the purposes of collective bargaining.

7  RCW 74.39A.270(1). The scope of collective bargaining for Homecare Providers is limited to their

8  wages, hours, and working conditions. RCW 74.39A.270(5).

9      18. Family Child Care Providers provide "regularly scheduled care for a child or children in

10  the Provider's home or the child's home for periods of less than twenty-four hours, or, if necessary,

11  due to the nature of the parent's work, for periods equal to or greater than twenty-four hours; (b)

12  receives child care subsidies; and (c) is either licensed by the statute under RCW 74.15.030 or is

13  exempt from licensing under chapter 74.15 RCW." RCW 41.56.030(7).

14      19. Child Care Providers are public employees solely for the purposes of collective bargaining.

15  RCW 41.56.028(1). The scope of collective bargaining for Child Care Providers must be limited

16  solely to: (i) economic compensation, such as manner and rate of subsidy and reimbursement,

17  including tiered reimbursements; (ii) health and welfare benefits; (iii) professional development

18  and training; (iv) labor-management committees; (v) grievance procedures; and (vi) other

19  economic matters. Retirement benefits are not subject to collective bargaining. RCW 41.56.028(c).

20      20. Providers work directly in their homes or the homes of their clients or in small day care

21  facilities, which are scattered throughout Washington State. Homecare and Childcare Providers

22  frequently enter and exit the Provider workforces; names on the Provider lists fluctuate

23  substantially.

24

FREEDOM
FOUNDATION

Legal@myFreedomFoundation.com
360.956.3482 | myFreedomFoundation.com
WA | PO Box 552, Olympia, WA 98507
OR | 736 Hawthorne Ave NE, Salem OR 97301

21. The Homecare Provider bargaining unit is the total number of all Washington Homecare Providers at any given time. SEIU 775 is the exclusive bargaining representative for the entire Homecare Provider bargaining unit, but not all Homecare Providers are Union members.

22. SEIU 775 unionized Homecare Providers by obtaining Provider lists from the State.

23. The Childcare Provider bargaining unit is the total number of all Washington Childcare Providers at any given time. SEIU 925 is the exclusive bargaining representative for the entire Childcare Provider bargaining unit, but not all Childcare Providers are Union members.

24. SEIU 925 unionized Childcare Providers by obtaining Provider lists from the State.

25. Because the Homecare and Childcare Provider bargaining units fluctuate regularly and substantially, anyone who wants to speak to Providers must request and obtain updated Provider lists from DSHS and DEL.

26. Providers have no means or ability to communicate with their fellow Providers scattered throughout Washington State absent receiving updated Provider lists pursuant to the PRA.

27. Plaintiffs and any speakers who wish to speak to Providers must obtain updated Provider lists pursuant to the PRA.

28. Defendants create and maintain updated Provider lists as part of their administration of the Provider programs. These lists are public records within the definition of RCW 42.56.010(3).

29. The Unions rely on updated Provider lists, obtained regularly and routinely from Defendants, to communicate with Providers—including those Providers who have explicitly declined to support the Unions, financially or otherwise. These communications include Union-related speech and non-Union, wholly political speech.

**B. Plaintiff Freedom Foundation's Provider Outreach is facilitated by access to updated Provider lists.**

30. The Foundation is a 501(c)(3) charitable and educational non-profit organization that seeks

FREEDOM
FOUNDATION
Legal@myFreedomFoundation.com
360.956.3482 | myFreedomFoundation.com
WA | PO Box 552, Olympia, WA 98507
OR | 736 Hawthorne Ave NE, Salem OR 97301

to advance individual liberty, free enterprise, and limited, accountable government.

31. Since 2013, the Foundation has fulfilled that mission through its Labor Reform Project. This project seeks to enhance workers' rights by informing them of their rights and how to exercise those rights, supporting common-sense labor reforms, and challenging practices and laws that permit public sector labor unions to deprive workers of their rights. To advance these goals, the Foundation produces policy research, litigates, and directly communicates with citizens.

32. In June 2014, the U.S. Supreme Court held that the First Amendment prohibits states from compelling quasi-public employees to pay agency fees to a Union as a condition of employment. *Harris*, 134 S.Ct. 2618. The Court held that the government violates the First Amendment by requiring partial-public healthcare workers to pay agency fees. *Id.*

33. In response to *Harris*, the Foundation developed a major outreach program to contact Washington quasi-public employees affected by *Harris*—particularly Homecare and Childcare Providers, who are public employees solely for the purposes of collective bargaining. Its outreach communications include e-mail, telephone, direct mail, and door-to-door canvasing.

34. The Provider outreach program is only possible and directly facilitated by the Foundation's access to updated Homecare and Childcare Provider lists obtainable from the State via the PRA, RCW 42.56. Before I-1501, no PRA exemption prevented the release of Homecare and Childcare Provider lists. *See SEIU 925 v. Freedom Found.*, 197 Wn. App. 203 (Wash. Ct. App. 2016); *SEIU 775NW v. DSHS*, 193 Wn. App.377 (Wash. Ct. App. 2016), *review denied sub nom*.

35. The Foundation's outreach to Providers depends on identifying the proper audience for its speech: Homecare and Childcare Providers. Without access to information, the Foundation cannot effectively and efficiently communicate with Providers.

36. After I-1501, the Unions may continue to access and do, in fact, regularly receive current

FREEDOM
FOUNDATION
Legal@myFreedomFoundation.com
360.956.3482 | myFreedomFoundation.com
WA | PO Box 552, Olympia, WA 98507
OR | 736 Hawthorne Ave NE, Salem OR 97301

Homecare and Childcare Provider lists from Defendants, but other speakers may no longer receive Homecare and Childcare Provider lists.

**C. The Unions rely upon Provider lists they receive from Defendants to engage in political communications with Homecare and Childcare Providers.**

37. The Unions use the state-provided lists to engage in political speech with Homecare and Childcare Providers. These communications include encouragements to Providers to exercise their constitutional rights to vote, and explicit endorsements for candidates and ballot measures. Many of these communications do not relate to the Unions' roles as Providers' exclusive bargaining representatives. SEIU 775 and SEIU 925 can send these political communications to Homecare and Childcare Providers because they possess regularly-updated Provider lists from the Defendants.

38. SEIU 775 and SEIU 925 have used and continue to use the regularly-updated Provider lists to engage in door-to-door canvassing and communications with Homecare and Childcare Providers about political matters.

**D. Childcare Providers left SEIU 925 in large numbers when the Foundation informed them of their constitutional rights.**

39. DEL provided the Foundation Childcare Provider lists in July and August of 2014.

40. For over two years, the Foundation has relied upon the lists from July and August 2014 to conduct outreach to Childcare Providers regarding their constitutional rights to resign membership in and cease paying dues to SEIU 925.

41. Since the Foundation started contacting Childcare Providers in September 2014, SEIU 925's dues-paying membership has sharply declined. When the Foundation began its outreach, 100% of Childcare Providers paid union dues. As of January 2017, 63.2% of Childcare Providers have resigned their membership in and ceased paying dues to SEIU 925.

FREEDOM FOUNDATION

Legal@myFreedomFoundation.com
360.956.3482  |  myFreedomFoundation.com
WA  |  PO Box 552, Olympia, WA 98507
OR  |  736 Hawthorne Ave NE, Salem OR 97301

**E. SEIU 775 sued the Foundation to prevent it from obtaining the information it needed to communicate with Homecare Providers about their constitutional rights.**

42. On July 2, 2014—two days after the Supreme Court's decision in *Harris*—the Foundation submitted a public records request to DSHS for a Homecare Provider list. DSHS determined that the public record was disclosable, but SEIU 775 sued in an attempt to enjoin the release of the list.

43. On October 3, 2014, the Thurston County Superior Court entered a Temporary Restraining Order ("TRO") enjoining disclosure of the Homecare Provider list, solely to preserve the fruits of SEIU 775's litigation. On October 16, 2014, the same court denied SEIU 775's request for preliminary and permanent injunctive relief, rejecting every substantive argument raised by the union. But in the same Order, the court extended the TRO for twenty days to allow SEIU 775 to appeal and seek from the Washington Court of Appeals a Stay Pending Appeal. On November 3, 2014, the Commissioner of the Washington Court of Appeals entered a Stay, solely to preserve the fruits of SEIU 775's appeal.

44. On April 12, 2016, the Court of Appeals issued a published opinion rejecting all of SEIU 775's arguments, and affirming that the Foundation was entitled to the Homecare Provider list it requested. *SEIU 775*, 193 Wn. App. 377.

45. SEIU 775 subsequently petitioned the Washington Supreme Court for discretionary review, which was unanimously denied.

46. Finally, on September 28, 2016, 819 days after the Foundation's initial public records request, DSHS provided the Foundation with a Homecare Provider list – that was current as of July 2, 2014, the date of the Foundation's request. After two-plus years of litigation, the Foundation received a two-year old list. Because turnover within the Homecare Provider bargaining unit is substantial, that two-year-old list of Homecare Providers likely differed from the most current list by 40%.

FREEDOM
FOUNDATION

Legal@myFreedomFoundation.com
360.956.3482 | myFreedomFoundation.com
WA | PO Box 552, Olympia, WA 98507
OR | 736 Hawthorne Ave NE, Salem OR 97301

47. Because the Homecare Provider list the Foundation received on September 28, 2016 was so outdated, the Foundation requested an updated list of Homecare Providers from DSHS on September 29, 2016—the day after it received its first list.

48. Boardman also demanded that DSHS fulfill his July 2015 PRA request for a Homecare Provider list.

49. On October 24, 2016, SEIU 775 once again filed suit against the Foundation and Boardman to enjoin the disclosure of updated Homecare Provider lists. *See SEIU 775 v. Freedom Foundation, et al.*, Thurston Co. Sup. Ct. No. 16-2-04312-34.

50. On December 16, 2016, the Thurston County Superior Court once again rejected each of SEIU 775's arguments, and determined that the Foundation and Boardman were entitled to current Homecare Provider lists. *Id.* But, that court once again stayed the Homecare Provider lists' release to allow SEIU 775 to seek an appellate stay to preserve the fruits of (yet-another) SEIU 775 appeal, which the Court of Appeals Commissioner granted. *Puget Sound Advocates for Retirement Action v. Dep't of Social & Health Serv.*, Wash. Ct. App. Div. II No. 49977-1-II (Jan. 24, 2017).

51. Rather than wait another two years to prevail on appeal only to receive another outdated list, the Foundation dropped its public records request and SEIU 775 dismissed its appeal.

52. Because of the Foundation's relative difficulty in obtaining updated and accurate Homecare provider lists, the Foundation's outreach to Homecare Providers has been quite limited, and SEIU 775's dues-paying membership has only dropped by approximately 11%.

**F. SEIU 925 sued the Foundation to prevent it from obtaining the information it needed to communicate with Childcare Providers about their constitutional rights.**

53. The Foundation requested an updated Childcare Provider list from DEL on November 2, 2016.

54. On November 16, 2016, SEIU 925 sued the Foundation to enjoin the disclosure of an

FREEDOM FOUNDATION

Legal@myFreedomFoundation.com
360.956.3482  |  myFreedomFoundation.com
WA  |  PO Box 552, Olympia, WA 98507
OR  |  736 Hawthorne Ave NE, Salem OR 97301

1   updated Childcare Provider list. *See SEIU 925 v. Freedom Foundation, et al.*, Thurston Co. Sup.

2   Ct. No. 16-2-04580-34. The Thurston County Superior Court denied SEIU 925's request for an

3   injunction, rejecting every substantive argument the Union raised. But, that Court stayed the

4   Childcare Provider list's release so SEIU 925 could seek an appellate stay to preserve the fruits of

5   (yet-another) appeal, which the Court of Appeals Commissioner granted. *Serv. Employee Int'l*

6   *Union 925 v. Dep't of Early Learning*, Wash. Ct. App. Div. II No. 49726-3-II (Jan. 25, 2017). As

7   of now, the Foundation is still litigating this case.

8   **G. SEIU 775 attempted to stymie the Foundation's Provider outreach in the Legislature.**

9   55. During the 2015 legislative session, SEIU 775 lobbied for and vocally supported Senate

10  Bill ("SB") 5678 and House Bill ("HB") 1349, which would have rendered all Provider

11  information non-disclosable under the PRA. Neither bill became law.

12  56. In 2016, SEIU 775 supported SB 6542, another bill that would have rendered all Provider

13  information non-disclosable under the PRA. To rally support for SB 6542, SEIU 775 emailed

14  Homecare Providers on February 11, 2016, alleging that the "**Public Records Act has a loophole**

15  **that lets anyone obtain our personal contact information.** And as it's happened, Caregivers

16  across the state have been targeted by the Freedom Foundation[.] . . . **The Legislature needs to**

17  **close this dangerous loophole so that caregivers and other public service workers like us can**

18  **do our jobs without fear of harassment.**" (emphasis in original). SB 6542 did not become law.

19  **H. The Unions drafted I-1501 to target and stop the Foundation's Provider outreach.**

20  57. I-1501 was misleadingly titled "an act relating to the protection of seniors and vulnerable

21  individuals from financial crimes and victimization."

22  58. I-1501 was approved by the voters in November 2016; it became law on December 8, 2016.

23  59. Part III, Section 8 of I-1501 dramatically amends the PRA by creating a new exemption

24

FREEDOM FOUNDATION

Legal@myFreedomFoundation.com
360.956.3482 | myFreedomFoundation.com
WA | PO Box 552, Olympia, WA 98507
OR | 736 Hawthorne Ave NE, Salem OR 97301

1  for all Homecare and Childcare Provider-related information. Now codified as RCW 42.56.640,

2  the new law exempts Homecare and Childcare Providers' "names, addresses, GPS [global

3  positioning system] coordinates, telephone numbers, email addresses, social security numbers,

4  driver's license numbers, or other personally identifying information."

5  60. Notably, the PRA already contained several provisions to protect Providers' privacy. *See,*

6  *e.g.*, RCW 42.56.250(3) (exempting public employees' personal contact information and

7  information about their dependents from disclosure); RCW 42.56.230(3) (exempting records

8  related to public employees if disclosure would violate those employees' right to privacy).

9  61. Part III, Section 10 of I-1501 was codified as RCW 43.17.410, and this new law prohibits

10  "the state or any of its agencies" from "releas[ing]" the information exempted by RCW 42.56.640.

11  62. The Unions are explicitly exempted from I-1501. "Nothing… shall prevent the release of

12  public [Homecare and Childcare Provider] information" if "[t]he information is being provided to

13  a representative certified or recognized under RCW 41.56.080, or as necessary for the provision

14  of fringe benefits to public employees, and the recipient agrees to protect the confidentiality of the

15  information;" *see* RCW 42.56.645(1)(d); or if "[t]he disclosure is required by a contract between

16  the state and a third party, and the recipient agrees to protect the confidentiality of the information;"

17  *see id.* at § 645(1)(f).[2] Both these exceptions enable the Union to continue receiving, from

18  Defendants, updated Provider lists. Moreover, I-1501 contains no limitations on the

19  communications the Unions may engage in with Providers, communications that are directly

20  facilitated by the Unions' uninterrupted access to Provider lists.

21  **I.  SEIU 775 and SEIU 925 were the sole financial supporters of I-1501.**

22  63. Federal records indicate that SEIU 775 paid the law firm that drafted I-1501 $21,532 in

23

24  _____

[2] These exceptions appear in Part III, Section 11 of I-1501.

COMPLAINT
No. 3:17-cv-05255                    12

FREEDOM FOUNDATION

Legal@myFreedomFoundation.com
360.956.3482  |  myFreedomFoundation.com
WA  |  PO Box 552, Olympia, WA 98507
OR  |  736 Hawthorne Ave NE, Salem OR 97301

1    November 2015.[3]

2    64. SEIU 775's Secretary-Treasurer Adam Glickman chaired the "Campaign to Prevent Fraud

3    and Protect Seniors"—the official political action committee supporting I-1501.[4] As of December

4    7, 2016, the Pro-1501 PAC received $1,883,888.15 in total cash and in-kind contributions (non-

5    monetary support) during the 2016 election cycle.[5]

6    65. Only three contributors funded the Pro-1501 PAC: SEIU 775, SEIU 925, and the 5th

7    District Democrats.[6] The 5th District Democrats contributed $50 in cash. The remaining

8    $1,883,888.15 in cash and in-kind contributions to the Pro-1501 PAC came solely from SEIU 775

9    and SEIU 925.

10   66. SEIU 925 contributed $250,000 in cash to the Pro-1501 PAC.

11   67. SEIU 775 contributed at least $1,575,000 in cash and at least $58,526.78 in in-kind

12   contributions[7] to the Pro-1501 PAC. These in-kind contributions included SEIU 775's signature

13   gathering efforts, phone banking, postage services and costs, and general staff services.

14   **J.  The Unions' motive in creating, funding, and supporting I-1501 was to silence
         Plaintiffs' speech.**

15   68. In a radio interview on NPR from July 2016, SEIU 775 Secretary-Treasurer Adam

16   Glickman acknowledged that SEIU 775 created I-1501 to stop the Foundation from obtaining

---

[3] According to the Washington Secretary of State, Eric Lowney, of Smith & Lowney PLLC, was I-1501's "primary sponsor." Available at https://www.sos.wa.gov/elections/initiatives/initiatives.aspx?y=2016&t=p (last visited Apr. 5, 2017).

[4] The Political Committee Registration Form ("Form C1PC") for the "Campaign to Prevent Fraud and Protect Seniors" that was submitted to the Public Disclosure Commission on March 30, 2016 is available at https://web.pdc.wa.gov/rptimg/default.aspx?docid=4558230 (last visited Apr. 5, 2017).

[5] The Full Report of Receipts and Expenditures (Form C4) for the Pro-1501 PAC that was submitted to the Public Disclosure Commission on December 7, 2016 is available at https://web.pdc.wa.gov/rptimg/default.aspx?batchnumber=100736889 (last visited March 26, 2017).

[6] Available at http://web.pdc.wa.gov/MvcQuerySystem/CommitteeData/contributions?param=Q0FNUFBGIDExMQ%3D%3D%3D%3D&year=2016&type=initiative (last visited March 26, 2017).

[7] Available at http://web.pdc.wa.gov/MvcQuerySystem/CommitteeData/inkind?param=Q0FNUFBGIDExMQ%3D%3D%3D%3D&year=2016&type=initiative (last visited March 26, 2017).

FREEDOM FOUNDATION
360.956.3482  |  myFreedomFoundation.com
Legal@myFreedomFoundation.com
WA  |  PO Box 552, Olympia, WA 98507
OR  |  736 Hawthorne Ave NE, Salem OR 97301

1      Provider lists and communicating with them.[8]

2      69. Sometime after September 28, 2016, SEIU 775 sent a letter to all Homecare Providers that

3 stated: "There's one more way you can fight to stop the Freedom Foundation: When you get your

4 ballot in the mail, vote YES on I-1501[.]"

5      70. On October 11, 2016, SEIU 775 posted a social media image on Facebook, revealing its

6 true motives regarding I-1501:

7      **Groups like the Freedom Foundation are threatening our union.** They tell us
to stop paying dues—but that would weaken our union and rollback what we've

8 won . . . I-1501 will keep the Freedom Foundation and others from getting personal
information for us and our clients. **A vote for I-1501 is a vote to protect our union,**

9 **ourselves and our clients.**" (Emphasis in original.)

10      71. SEIU 775 also posted this image on Twitter.

11      72. On December 6, 2016, after I-1501 passed, SEIU 925 sent a letter to all Childcare Providers

12 stating: "Another big win was the passage of Initiative 1501…Just because we receive funding

13 from the state to care for subsidized children doesn't mean extremist groups like the anti-union

14 Freedom Foundation should be able to get our personal information and target us for their own

15 political agenda."

16      73. Nearly every Washington newspaper opposed I-1501 as a deceptive attempt by a special

17 interest to abuse the initiative process for its own benefit. Those newspapers recognized that I-

18 1501 was not a good-faith attempt to protect seniors or vulnerable individuals.

19      74. *The Seattle Times* described I-1501 as "a Trojan horse." It told readers that I-1501 was

20 "being run by a deep-pocketed special-interest group that wants to weaken the state [PRA]" and

21 "Don't be fooled by I-1501's pitch to close scary loopholes and block the release of records that

22 enable identity theft. There are no such loopholes. The state's [PRA] already gives sensitive

23

24 [8] Available at http://knkx.org/post/how-fight-between-seiu-775-and-conservative-think-tank-led-initiative-identity-theft (last visited March 27, 2017).

FREEDOM FOUNDATION
Legal@myFreedomFoundation.com
360.956.3482 | myFreedomFoundation.com
WA | PO Box 552, Olympia, WA 98507
OR | 736 Hawthorne Ave NE, Salem OR 97301

1

records explicit protections."[9]

2

75. *The Columbian* suggested that "the true purpose behind [I-1501] is to protect [SEIU 775],

3

which represents a large percentage of in-home caregivers. Union officials would prefer that

4

members not be informed that they no longer can be forced to pay dues to [SEIU 775]."[10]

5

76. *The Spokesman-Review* asserted that "[The Foundation] wants to contact home-health care

6

workers to let them know they have the right to leave their union and stop paying dues . . . [SEIU

7

775] doesn't like this, so it wants an exemption to the [PRA] that would keep workers' information

8

under wraps."[11]

9

77. Many other Washington and national publications editorialized against I-1501.[12]

10

11

[9] Available at http://www.seattletimes.com/opinion/editorials/reject-i-1501-and-urge-lawmakers-to-address-identity-theft/ (last visited March 26, 2017). *See also* THE TACOMA NEWS TRIBUNE, available at http://www.thenewstribune.com/opinion/article107896087.html (last visited March 26, 2017).

[10] Available at, http://www.columbian.com/news/2016/oct/05/in-our-view-no-on-i-1501/ (last visited March 26, 2017).

[11] Available at, http://www.spokesman.com/stories/2016/oct/18/i-491-yes-i-1501-no/ (last visited March 26, 2017).

[12] THE OLYMPIAN, available at http://www.theolympian.com/opinion/editorials/article112076757.html (last visited March 26, 2017); WALLA WALLA UNION BULLETIN, available at http://www.union-bulletin.com/opinion/editorials/i-t-help-seniors-or-the-vulnerable/article_1c015786-6bb6-11e6-8d3c-239468c3682d.html (last visited March 26, 2017); TRI-CITY HERALD, available at http://www.tri-cityherald.com/opinion/editorials/article104739261.html (last visited March 26, 2017); SPOKANE JOURNAL, available at http://www.spokanejournal.com/local-news/initiative-1501-focus-deterring-scams-targeting-the-elderly/ (last visited March 26, 2017); Q13 FOX, available at http://q13fox.com/2016/10/06/voter-guide-initiative-1501-increase-penalties-for-crimes-against-vulnerable-people/ (last visited March 26, 2017); KOMO NEWS, available at http://komonews.com/news/consumer/statewide-initiative-to-protect-seniors-from-fraud-is-more-involved-than-it-appears (last visited March 26, 2017); THE LEWIS COUNTY CHRONICLE, available at http://www.chronline.com/opinion/other-views-reject-i-and-urge-lawmakers-to-address/article_50b2597a-8bf1-11e6-8cd2-7b8330b5daed.html (last visited March 26, 2017); *The Seattle Weekly,* available at http://www.seattleweekly.com/news/the-endorsements/ (last visited March 26, 2017); THE KITSAP SUN, available at http://www.kitsapsun.com/opinion/letters-sink-every-state-initiative-3f2805bf-2a67-2c82-e053-0100007f9dfe-397501551.html (last visited March 26, 2017); HERALD NET, available at http://www.heraldnet.com/opinion/letter-initiative-1501-is-only-about-helping-union/ (last visited March 26, 2017); THE WENATCHEE WORLD, available at http://www.wenatcheeworld.com/news/2016/oct/09/editorial-board-secrecy-for-dues/ (last visited March 26, 2017); THE NATIONAL REVIEW, available at http://www.nationalreview.com/article/441379/service-employees-international-union-ballot-initiative-1501-freedom-foundation-public-records-act (last visited March 26, 2017); THE WASHINGTON FREE BEACON, available at http://freebeacon.com/issues/seiu-id-theft-initiative-smokescreen-forced-dues/ (last visited March 26, 2017); THE WASHINGTON EXAMINER, available at http://www.washingtonexaminer.com/seattle-union-spends-1.8m-to-change-disclosure-laws-in-its-favor/article/2605805 (last visited March 26, 2017); FORBES, available at http://www.forbes.com/forbes/welcome/?toURL=http://www.forbes.com/sites/georgeleef/2016/11/05/unions-resort-to-election-trickery-in-grubby-efforts-at-maximizing-their-legal-plunder/&refURL=&referrer=#3cad0b933706 (last visited March 26, 2017); BLOOMBERG BNA, available at https://www.bna.com/caregiver-info-disclosure-n57982082391/ (last visited March 26, 2017); THE WALL STREET JOURNAL, available at http://www.wsj.com/articles/the-seius-ballot-fraud-1477435711 (last visited March 26, 2017).

FREEDOM FOUNDATION

Legal@myFreedomFoundation.com
360.956.3482 | myFreedomfoundation.com
WA | PO Box 552, Olympia, WA 98507
OR | 736 Hawthorne Ave NE, Salem OR 97301

**K. I-1501 has stymied Plaintiffs' efforts to speak to Homecare and Childcare Providers.**

78. I-1501 makes it impossible for the Foundation to acquire updated lists of Homecare and Childcare Providers. Without such lists, the Foundation will no longer be able to effectively and efficiently inform Homecare and Childcare Providers of their constitutional rights.

79. I-1501 also makes it impossible for Boardman to acquire an updated list of Homecare Providers so he will be unable to communicate effectively and efficiently with his fellow Providers. On March 15, 2017, DSHS denied Boardman's request because of I-1501.

80. I-1501 also makes it impossible for Thurber and Benn to acquire updated lists of Childcare Providers so they will be unable to communicate effectively and efficiently with their fellow Providers. I-1501 eliminates Thurber's longstanding speech and associational activities related to the Eastern Washington Child Care Association. On January 30, 2017, DEL denied Thurber's request for an updated Childcare Provider list because of I-1501.

81. Likewise, I-1501 eliminates Benn's longstanding speech to her fellow Providers in the form of her e-mail newsletters discussing issues of shared concern. On February 3, 2017, DEL denied Benn's request for an updated Childcare Provider list because of I-1501.

**L. I-1501 eliminates Thurber's and Benn's right to de-certify and replace the existing Childcare Provider Union.**

82. Thurber and Benn want to de-certify SEIU 925 and replace it with the PNW Child Care Association. To call a de-certification election, they must garner interest from 30% of the entire Childcare Provider bargaining unit. After the election is called, they must convince a majority of voting Childcare Providers to certify the PNW Child Care Association as their new bargaining representative.

83. Currently, Thurber and Benn are working from years-old Childcare Provider lists they previously obtained from Defendants. But because those lists are so outdated and many of their

FREEDOM FOUNDATION

Legal@myFreedomFoundation.com
360.956.3482 | myFreedomFoundation.com
WA | PO Box 552, Olympia, WA 98507
OR | 736 Hawthorne Ave NE, Salem OR 97301

1  fellow Providers change addresses frequently, they have had several hundred mailings returned to

2  them. Clearly, if Thurber and Benn had updated lists, their prospects for success would be

3  considerably higher. Of the Childcare Providers they have reached so far, 50% agree to call for a

4  de-certification election.

5      84. Both Thurber and Benn submitted requests to DEL for updated Childcare Provider lists

6  solely to facilitate their de-certification efforts. But DEL denied both their requests, citing I-1501.

7      85. Without these lists, it will be impossible for Thurber and Benn (or any other Childcare

8  Provider) to follow the prescribed statutory processes they must to exercise their fundamental and

9  constitutionally-protected associational rights.

FREEDOM
FOUNDATION
Legal@myFreedomFoundation.com
360.956.3482  |  myFreedomFoundation.com
WA  |  PO Box 552, Olympia, WA 98507
OR  |  736 Hawthorne Ave NE, Salem OR 97301

# V. CLAIMS FOR RELIEF

86. Regarding the below-referenced claims, Defendant Inslee enforces the implementation of I-1501.

87. Regarding the below-referenced claims, Defendant Lashway implements I-1501 as applied to Homecare Provider lists and Childcare Provider lists.

88. Regarding the below-referenced claims, Defendant Hunter implements I-1501 as applied to Childcare Provider lists.

## CLAIM 1
### Equal Protection Clause of the Fourteenth Amendment, through 42 U.S.C. § 1983
### *Part III of I-1501 significantly interferes with Plaintiffs' fundamental rights*

89. Plaintiffs re-allege and incorporate by reference the paragraphs set forth above.

90. The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution prohibits Defendants from significantly interfering with Plaintiffs' fundamental rights of free speech and association and treating similarly situated groups differently based on the protected expressive activities in which they are engaged. Defendants are liable under 42 U.S.C. § 1983 if a state law significantly interferes with citizens' fundamental rights and the law does not pass strict scrutiny.

91. Plaintiffs and the Unions are similarly situated because both are ideologically-motivated groups and individuals that engage in constitutionally-protected speech with Providers.

92. The fundamental rights of free speech and freedom of association are guaranteed by the First Amendment of the U.S. Constitution.

93. Part III of I-1501 prevents Plaintiffs from accessing updated Provider lists, which directly facilitate Plaintiffs' political speech to Providers.

94. I-1501 allows the Unions to continue accessing current lists of Providers' names and

FREEDOM
FOUNDATION
Legal@myFreedomFoundation.com
360.956.3482 | myFreedomFoundation.com
WA | PO Box 552, Olympia, WA 98507
OR | 736 Hawthorne Ave NE, Salem OR 97301

1    contact information, which directly facilitates the Unions' political speech to Providers.

2        95. I-1501 silences Plaintiffs' political speech to Providers by preventing Plaintiffs from

3    utilizing an essential tool to engage in direct, one-on-one speech with Providers.

4        96. I-1501's classifications significantly interfere with the exercise of Plaintiffs' fundamental

5    rights of free speech and association by preventing the disclosure of updated Provider lists to

6    Plaintiffs, but not the Unions; lists which are essential for both Plaintiffs and the Unions to engage

7    in political speech with Providers.

8        97. I-1501's significant interference with Plaintiffs' but not the Unions' fundamental rights of

9    free speech and association is not narrowly tailored to achieve a compelling government interest.

10       98. By and through Part III of I-1501, Defendants have significantly interfered with, and will

11   continue to significantly interfere with, Plaintiffs' fundamental rights to free speech and

12   association, in violation of the Equal Protection Clause of the Fourteenth Amendment. Part III of

13   I-1501 is unconstitutional facially and as applied to Plaintiffs.

14                                              CLAIM 2
         **Equal Protection Clause of the Fourteenth Amendment, through 42 U.S.C. § 1983**
15       *Part III of I-1501 treats similar, non-suspect classes differently and is motivated by animus*

16       99. Plaintiffs re-allege and incorporate by reference the paragraphs set forth above.

17       100. The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution

18   prohibits Defendants from treating similarly-situated, non-suspect class groups differently when

19   that classification is motivated by, and a manifestation of, animus toward a targeted group.

20   Defendants are liable under 42 U.S.C. § 1983 if a state law treats similarly groups differently, the

21   groups are not a suspect class, and the laws were intended with, and manifestation of, animus to

22   harm a targeted group that is disadvantaged under the law in question.

23       101. Plaintiffs and the Unions are similarly situated because both are groups and individuals

24

FREEDOM FOUNDATION

Legal@myFreedomFoundation.com
360.956.3482  |  myFreedomFoundation.com
WA  |  PO Box 552, Olympia, WA 98507
OR  |  736 Hawthorne Ave NE, Salem OR 97301

1   that engage in constitutionally protected speech with Providers.

2       102. I-1501 prevents Plaintiffs from accessing updated Provider lists which directly facilitate

3   Plaintiffs' political speech to Providers.

4       103. I-1501 allows the Unions to continue accessing updated Provider lists which directly

5   facilitate the Unions' political speech to Providers.

6       104. Thus, I-1501 treats Plaintiffs and the Unions differently by preventing Plaintiffs from

7   engaging in political speech with Providers but allowing the Unions to continue engaging in such

8   speech with Providers.

9       105. I-1501 was motivated by animus because it was intended to silence Plaintiffs' political

10  speech to Providers that the Unions disagreed with.

11      106. Specifically, I-1501 was drafted with the intention to silence the Foundation's political

12  speech and thus harm the Foundation.

13      107. The Unions created, funded, and supported I-1501 to silence the Foundation's speech, and

14  were motivated solely by their animus toward the Foundation, its outreach efforts, and its political

15  speech.

16      108. Because I-1501 was motivated by animus to silence the speech of a group whose political

17  views the Unions disagreed with, it cannot be reasonably related to a legitimate government

18  interest. I-1501 does not satisfy rational basis review.

19      109. By and through Part III of I-1501, Defendants treat similarly-situated, non-suspect class

20  groups differently based on a law motivated by, and manifesting, animus, in violation of the Equal

21  Protection Clause of the Fourteenth Amendment. Part III of I-1501 is unconstitutional facially and

22  as applied to Plaintiffs.

23

24

FREEDOM
FOUNDATION

Legal@myFreedomFoundation.com
360.956.3482 | myFreedomFoundation.com
WA | PO Box 552, Olympia, WA 98507
OR | 736 Hawthorne Ave NE, Salem OR 97301

CLAIM 3
First Amendment, through 42 U.S.C. § 1983
*Part III of I-1501 is a viewpoint-discriminatory speech regulation*

110. Plaintiffs re-allege and incorporate by reference the paragraphs set forth above.

111. The First Amendment to the U.S. Constitution, incorporated against the State of Washington by the Fourteenth Amendment, protects organizations' and individuals' right to engage in political speech. Further, the First Amendment forbids the Defendants from favoring one viewpoint over other viewpoints. Defendants are liable under 42 U.S.C. § 1983 if it infringes on the Plaintiffs' First Amendment rights.

112. The Foundation's outreach program to Providers is constitutionally protected speech. Plaintiffs' other expressive activities which are directed at Providers are constitutionally protected speech.

113. Accessing updated Provider lists obtained through the PRA is the only way Plaintiffs' can practicably and effectively engage in their constitutionally protected speech with Providers.

114. I-1501 does not escape constitutional scrutiny because it is facially neutral—instead, I-1501 was drafted, sponsored, and supported with the purpose of silencing the Foundation's Provider outreach.

115. The First Amendment prohibits Defendants from intentionally erecting barriers to prevent the Foundation from exercising its constitutionally protected speech rights.

116. Further, Part III of I-1501 favors the Union's political and ideological viewpoints because the initiative exempts unions from its coverage, allowing the Unions to continue communicating their viewpoint to Provides. Because the Initiative only burdens the speech of individuals and entities with views divergent from those of the Unions, it is viewpoint-discriminatory.

117. The Unions' control over I-1501's creation, funding, and passage demonstrates that I-1501

FREEDOM
FOUNDATION

Legal@myFreedomFoundation.com
360.956.3482 | myFreedomFoundation.com
WA | PO Box 552, Olympia, WA 98507
OR | 736 Hawthrone Ave NE, Salem OR 97301

1    exists to favor pro-union speech over non-union speech.

2        118. I-1501 is not narrowly tailored to serve a compelling government interest.

3        119. By and through Part III of I-1501, Defendants favor the Unions' viewpoint while silencing

4    Plaintiffs' viewpoints, in violation of the First Amendment, as secured against state infringement

5    by the Fourteenth Amendment and 42 U.S.C. § 1983. Part III of I-1501 is unconstitutional facially

6    and as applied to Plaintiffs.

7                                    CLAIM 4
                        First Amendment, through 42 U.S.C. § 1983
8                          *Part III of 1501 is facially overbroad*

9        120. Plaintiffs re-allege and incorporate by reference the paragraphs set forth above.

10       121. The First Amendment to the U.S. Constitution, incorporated against the State of

11   Washington by the Fourteenth Amendment, prohibits the State from enforcing laws that are so

12   overbroad that they impermissibly regulate protected expressive activities, in relation to the law's

13   plainly legitimate sweep.

14       122. Part III of I-1501 ostensibly seeks to protect the identity of vulnerable individuals by

15   preventing the release of Providers' names and contact information, but its real, and sole, purpose

16   is to silence the Plaintiffs' viewpoints.

17       123. The goal of I-1501 is not unrelated to suppression of Plaintiffs' expression, so it is

18   presumptively unconstitutional. I-1501's restrictions on access to Provider lists bears a close and

19   obvious nexus to Plaintiffs' speech.

20       124. Thus, while the State may legitimately "protect seniors and vulnerable individuals from

21   identity theft and other financial crimes," it may not do so by prohibiting constitutionally protected

22   speech completely unrelated to that objective.

23       125. Part III of I-1501 is facially overbroad, in violation of the First Amendment, as secured

24

FREEDOM
FOUNDATION
Legal@myFreedomFoundation.com
360.956.3482  |  myFreedomFoundation.com
WA  |  PO Box 552, Olympia, WA 98507
OR  |  736 Hawthorne Ave NE, Salem OR 97301

1 | against state infringement by the Fourteenth Amendment and 42 U.S.C. § 1983.

2 | **CLAIM 5**
**First Amendment, through 42 U.S.C. § 1983**
3 | *Part III of I-1501 violates Plaintiffs' Freedom of Association*

4 | 126. Plaintiffs re-allege and incorporate by reference the paragraphs set forth above.

5 | 127. The First Amendment to the U.S. Constitution, incorporated against Defendants by the

6 | Fourteenth Amendment, forbids Defendants from abridging individuals' freedom of association.

7 | Defendants are liable under 42 U.S.C. § 1983 if it violates Plaintiffs' First Amendment rights.

8 | 128. Thurber and Benn are trying to decertify SEIU 925, and certify PNW Child Care

9 | Association as their new union, following the requisite statutory processes. Without updated

10 | Childcare Provider lists, they will be unable to contact the required number of Childcare Providers

11 | and trigger a de-certification election.

12 | 129. Thurber and Benn have both requested and been denied by DEL updated Childcare

13 | Providers lists. DEL refused their requests because of I-1501. At the same time, SEIU 925

14 | continues to receive updated Childcare Provider lists.

15 | 130. Without the list of Childcare Providers, Thurber and Benn cannot exercise their

16 | fundamental associational rights, and are permanently subjected to an association with SEIU 925

17 | they cannot escape and do not desire.

18 | 131. I-1501 is not narrowly tailored to serve a compelling government interest.

19 | 132. Thus, Part III of I-1501 violates Plaintiffs' freedom of association, in violation of the First

20 | Amendment, as secured against state infringement by the Fourteenth Amendment and 42 U.S.C.

21 | § 1983.

22 |

23 |

24 |

FREEDOM
FOUNDATION
Legal@myFreedomFoundation.com
360.956.3482 | myFreedomFoundation.com
WA | PO Box 552, Olympia, WA 98507
OR | 736 Hawthorne Ave NE, Salem OR 97301

# VI. PRAYER FOR RELIEF

Wherefore, Plaintiff requests that this Court:

1.  Enter a declaratory judgment that Part III of I-1501 violates the First and Fourteenth Amendments to the U.S. Constitution facially and as applied to the Plaintiffs.

2.  Issue a temporary restraining order and/or preliminary injunction immediately enjoining the State of Washington, by and through Defendants, from enforcing I-1501.

3.  Issue a permanent injunction enjoining the State of Washington, by and through Defendants, from enforcing I-1501.

4.  Award the Plaintiffs their reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988.

5.  Award any other relief this Court deems just and proper.


RESPECTFULLY SUBMITTED on April 5, 2017,


By: s/ David M.S. Dewhirst

David M.S. Dewhirst, WSBA # 48229
Stephanie D. Olson, WSBA #50100
c/o Freedom Foundation
P.O. Box 552
Olympia, WA 98507
p. 360.956.3482
f. 360.352.1874
DDewhirst@freedomfoundation.com
SOlson@freedomfoundation.com

*Counsel for Plaintiffs*

FREEDOM FOUNDATION

Legal@myFreedomFoundation.com
360.956.3482  |  myFreedomFoundation.com
WA  |  PO Box 552, Olympia, WA 98507
OR  |  736 Hawthorne Ave NE, Salem OR 97301