UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BRADLEY BOARDMAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> JAY R. INSLEE, Governor of the State of Washington, et al., <br><br> Defendants. | CASE NO. C17-5255 BHS <br><br> ORDER GRANTING MOTION TO INTERVENE |

This matter comes before the Court on the motion to intervene of the Campaign to Prevent Fraud and Protect Seniors ("Campaign"). Dkt. 17. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On April 5, 2017, Plaintiffs filed their complaint against the State of Washington (the "State") and moved for an emergency temporary restraining order ("TRO"). Dkts. 1, 2. On April 10, 2017, the State responded. Dkt. 15. Later that day, the Court held a hearing and denied the motion for TRO. Dkt. 21.

Also on April 10, 2017, the Campaign moved for permissive intervention. Dkt. 17. On April 21, 2017, Plaintiffs responded in opposition to the motion. Dkt. 25. On April 28, 2017, the Campaign replied.

## II. FACTUAL BACKGROUND

This case deals with Plaintiffs' constitutional challenge to Washington State Initiative I501 ("I-1501"). Washington voters adopted I-1501 in the 2016 general election. I-1501 made several changes to laws regarding "vulnerable adults" and their homecare providers. It increased penalties for criminal identity theft and civil consumer fraud targeting seniors or vulnerable adults. I-1501 also created an exemption to Washington's Public Records Act ("PRA"). The PRA generally makes publicly available all records prepared, owned, used, or retained by government entities. *See* RCW 42.56.010(3); .070. Unless exempted by the PRA or other statute, public records must be provided upon request, or the public entity will face harsh monetary penalties. RCW 42.56.070(1); RCW 46.56.550(4). *See e.g.*, *Zink v. City of Mesa*, 162 Wn. App. 688, 701 (2011). Specifically, I-1501 exempted from public disclosure personal information of vulnerable individuals, as well as the information of their homecare providers, including names, addresses, GPS coordinates, telephone numbers, email addresses, social security numbers, driver's license numbers, or other personally identifying information. RCW 42.56.640.

Plaintiffs, in particular Plaintiff Freedom Foundation, have been attempting for years to obtain up-to-date public records of contact information for state-funded homecare providers (identified by statute as "Individual Providers"). Plaintiffs use the

information in the records to contact homecare providers to inform them of their constitutional right as partial-state employees to opt out of union membership and dues, as announced in *Harris v. Quinn*, 134 S. Ct. 2618 (2014). However, due to efforts by SEIU unions (who represent the applicable bargaining units as majority unions), a lengthy litigation process prevented Plaintiffs from obtaining up-to-date records, despite state court rulings that Plaintiffs were entitled to receive the records. *See* Dkt. 2 at 7–8; Dkt. 6; Dkt. 26. When the records were finally released in September of 2016, they were out-of-date and therefore useless to Plaintiffs' outreach efforts.

While the state courts grappled with Plaintiffs' rights to receive the records under the then-applicable provisions of the PRA, the Washington State legislature was dealing with proposals by certain unions to create a new exemption under the PRA that would prevent disclosure of the records. These efforts in the legislature failed. However, unions SIEU 775 and SEIU 925 also sponsored I-1501 through the 2016 general election ballot initiative process. Ultimately, I-1501 was passed by the state electorate and, through the initiative process, the unions' efforts successfully resulted in a PRA exemption that prevents the disclosure of contact information for members of the unions' bargaining units. As a result of I-1501, the State has denied Plaintiffs' recent PRA requests seeking up-to-date contact information for homecare providers, thereby hindering Plaintiffs' ability to efficiently identify and contact homecare providers to inform them of their First Amendment right to opt out of union dues and membership. Plaintiffs challenge the constitutionality of I-1501 on the basis that it abridges their First Amendment rights and violates the Equal Protection Clause of the Fourteenth Amendment.

## III. DISCUSSION

The Campaign moves to intervene in order to defend the constitutionality of I-1501. Dkt. 17. Plaintiffs object to the addition of the Campaign to this action under the permissive intervention rule, Fed. R. Civ. P. 24(b), arguing that intervention by the Campaign will poses a significant risk of delay and prejudice. Dkt. 25 at 12–13.

Permissive intervention is available to any party at the Court's discretion. In relevant part, Fed. R. Civ. P. 24(b) provides:

> (1) . . . On timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact.
>
> * * *
>
> (3) . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b). For the Court to allow permissive intervention, the moving party must show "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009). If these threshold requirements are satisfied, the Court may then consider other discretionary factors to determine whether intervention serves the interests of justice, including "whether the intervenor's interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying

factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler v. Pasadena Cty. Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

Plaintiffs do not dispute that the threshold requirements for permissive intervention are satisfied. Dkt. 25 at 7. The motion to intervene is timely, as it was filed within five days of the complaint. Dkts. 1, 17. The Court has jurisdiction, as the Campaign seeks only to raise defenses to Plaintiffs' constitutional claims. *See* Dkt. 17 at 6. Finally, the Campaign's purpose for intervening is to raise a defense that shares common questions of both law and fact with the underlying claims: namely, the constitutionality of I-1501. *See* Dkt. 1; Dkt. 17 at 4; Dkt. 25 at 7. Therefore, the only question before the Court is whether it should deny the motion to intervene on other equitable grounds.

Plaintiff argues that the Court should deny the motion to intervene on the basis that (1) the Campaign's interests are adequately represented by the State; (2) intervention will not contribute to the full factual and legal development of the case; and (3) the Campaign's participation will likely result in undue delay and hardship. Dkt. 25 at 8–13.

At this early stage, the State has adequately defended I-I501 in response to a motion for a TRO. Dkts. 15, 21. However, due to the expedited nature of the TRO hearing, the State's position has not been fully developed, and the Court finds that it is unclear what the State's position will be going forward. For instance, when questioned at the TRO hearing regarding applicability of RCW 42.56.645(1)(g) to certain plaintiffs in this case, neither the State nor Plaintiffs could offer a position on whether, under the Washington Public Records Act ("PRA"), records would properly be released to certain

Plaintiffs based on their contracts with the State to provide services to vulnerable residents. Based on the substantial penalties implicated by wrongful withholding under the PRA, the State may have incentive to settle the matter and stay its enforcement of the new initiative until Government officials can gain a better grasp of the numerous, broadly-worded exceptions permitting disclosure found in RCW 42.56.645. Additionally, the State has thus far failed to raise the issue of *Pullman* abstention on the basis that a state court's construction of 42.56.645(1)(g) may likely render moot certain Plaintiffs' claims. Accordingly, the Court concludes that it does not appear that the interests of the State in defending the constitutionality of I-1501 are so aligned with the interests of the Campaign as to constitute a basis for denying intervention.

Additionally, the Court finds that intervention will allow for a more fully developed record. By intervening, the Campaign is present to participate in discovery. Plaintiff has already argued at great length that I-1501 was the product of animus towards their political speech. Allowing the Campaign's participation in this lawsuit will substantially improve the efficiency of potential discovery that is focused on the alleged animus behind the Campaign-sponsored initiative.

The last issue is whether the addition of the Campaign will cause undue delay or prejudice to the parties. The Court is concerned that it may. There is no dispute that the Campaign is a product of SEIU unions' efforts to pass I-1501. Plaintiffs have presented evidence to show that, in the recent past, the SEIU unions have used litigation tactics to prolong the release of the public records that are the underlying subject of this lawsuit, so that the records became outdated and useless by the date of their disclosure. *See* Dkt. 2 at

7–8; Dkt. 26. The Campaign has presented nothing to rebut this evidence. However, as both the Plaintiffs and the Campaign have acknowledged, the Court may limit the participation of permissive intervenors as necessary to prevent undue delay or prejudice. Dkt. 25 at 13; Dkt. 30 at 7. The Court and the parties have numerous tools to prevent or sanction conduct that results in unnecessary delay, and the Court will not tolerate abusive litigation tactics. *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) ("Federal courts possess certain 'inherent powers' . . . to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. That authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process.") (quotations omitted). Therefore, as the Campaign's intervention does not appear to threaten to inject any extraneous issues into the case, the Court finds that intervention is not likely to result in undue delay or prejudice to the parties.

Accordingly, the Court finds that permissive intervention is appropriate in this case and grants the motion to intervene.

## IV. ORDER

Therefore, it is hereby **ORDERED** that the Campaign's motion to intervene (Dkt. 17) is **GRANTED**.

Dated this 11th day of May, 2017.

BENJAMIN H. SETTLE
United States District Judge