## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

| | |
|---|---|
| BRADLEY BOARDMAN, a Washington Individual Provider; DEBORAH THURBER, a Washington Family Childcare Provider; SHANNON BENN, a Washington Family Childcare Provider; and Freedom Foundation, a Washington nonprofit organization, | NO. 3:17-cv-05255 |
| | STATE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |
| Plaintiffs, | NOTE ON MOTION CALENDAR: AUGUST 10, 2018 |
| v. | |
| GOVERNOR JAY INSLEE, Governor of the State of Washington; CHERYL STRANGE, Director of the Washington Department of Social and Health Services*; and ROSS HUNTER, Director of the Washington Department of Early Learning, | |
| Defendants, | |
| and | |
| CAMPAIGN TO PREVENT FRAUD AND PROTECT SENIORS, | |
| Intervenor-Defendants. | |

*Pursuant to Fed. R. Civ. P. 25(d), Cheryl Strange is substituted for Patricia Lashway as the current Director of the Washington State Department of Social and Health Services.

STATE DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:17-CV-05255

i

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................................ 1

II.   FACTS RELEVANT TO MOTION ........................................................................... 2

III.  ARGUMENT ................................................................................................................ 3

      A.   Summary Judgment Should Be Granted for the Defendants .................................... 3

      B.   I-1501 Easily Withstands First Amendment Scrutiny .............................................. 3

           1.   I-1501 Does Not Impede Any Speech ............................................................. 4

           2.   I-1501 Does Not Impede Any Right to Receive Information ........................... 8

           3.   I-1501 Is Not Facially Overbroad ................................................................. 10

           4.   I-1501 Furthers an Important Government Interest Unrelated to the
                Regulation of Free Expression ........................................................................ 12

      C.   I-1501's Public Records Act Provisions Do Not Regulate Any First
           Amendment Associational Rights or Activities ...................................................... 13

      D.   I-1501 Does Not Unequally Burden Speech In Violation of the Equal
           Protection Clause ................................................................................................... 17

      E.   Freedom Foundation Fails to Establish That Washington Voters Enacted I-
           1501 Out of Animus ............................................................................................... 19

IV.   CONCLUSION ............................................................................................................ 23

STATE DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:17-CV-05255

ii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

## I.    INTRODUCTION

Initiative 1501 (I-1501) is a public records law. Looking beyond the named Plaintiffs and Freedom Foundation's (collectively, Freedom Foundation) rhetoric and conclusory statements, Freedom Foundation does not identify any language, section, or provision in I-1501 that regulates or restricts speech in general, much less one that does so based on a particular speaker's message. As a result, Freedom Foundation's reliance on cases and theories that involve regulation of First Amendment protected activities is misplaced.

Underlying Freedom Foundation's flawed analysis is a failure to distinguish between restrictions on First Amendment activities and restrictions on access to government information. I-1501 contains only the latter. Controlling case law recognizes this distinction and consistently holds that there is no First Amendment right in obtaining government information. Accordingly, Freedom Foundation's First Amendment claims related to speech and association fail as a matter of law.

Freedom Foundation's Equal Protection claim also is without merit. I-1501 does not create an unequal burden on speech because it does not regulate speech at all. And the exception for certified collective bargaining representatives is based on long-standing authority that communicating with individuals in the bargaining unit (here, the in-home caregivers) is necessary for duly-elected unions to carry out their collective bargaining duties. This is a legitimate and rational basis for the exception.

Finally, Freedom Foundation does not allege or even attempt to establish that the millions of Washington voters who enacted I-1501 did so out of animus toward Freedom Foundation. While Freedom Foundation spends significant time focusing on its perception of the intent of I-

STATE DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:17-CV-05255

1

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1501's union supporters, ultimately it is the intent of the voters that must be determined to establish animus. Washington voters acted rationally in deciding that I-1501 could help prevent identity theft and crimes by prohibiting the public release of sensitive, personally identifying information. This legitimate purpose is more than enough to survive an Equal Protection challenge here. The State Defendants respectfully request that this Court deny Freedom Foundation's motion for summary judgment, grant summary judgment to the State Defendants and the Campaign, and dismiss this action in its entirety.

## II.    FACTS RELEVANT TO MOTION

Freedom Foundation's "factual background" and attached declarations include a number of unsupported and irrelevant factual claims about the State Defendants, its history with Service Employees International Union Healthcare 775NW and Service Employees International Union Local 925, as well as other unsupported claims about its own public outreach efforts. The declarations in support of the motion for summary judgment also come from undisclosed witnesses or contain inappropriate hearsay and otherwise inadmissible statements, which should be stricken or otherwise disregarded. Fed. R. Civ. P. 56(c); Local Rule 7(g); s*ee, e.g.*, Bramblett Decl. (Dkt. No. 51); Hayward Decl. (Dkt. No. 52) ¶¶ 11, 13, 17-18; Minnich Decl. (Dkt. No. 53); Sells Decl. (Dkt. No. 55) ¶¶ 5, 11-12, 14. Regardless, Freedom Foundation's purported facts are irrelevant to this Court's inquiry concerning the constitutionality of I-1501, which was enacted by the voters of the State of Washington. The State Defendants have already provided the Court with a full and accurate description of I-1501 in their Motion for Summary Judgment at pages two through four, Dkt. No. 47, and will rely on those facts for purposes of this response.

STATE DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:17-CV-05255

2

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

## III.    ARGUMENT

### A.    Summary Judgment Should Be Granted for the Defendants

Summary judgment is appropriate when there is "no genuine dispute as to any material fact" and the petitioner is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are viewed in the light most favorable to the nonmoving party "'only if there is a "genuine" dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). The mere existence of "some" alleged disputed fact is not sufficient if the fact is not ultimately material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. A court may grant summary judgment for the non-moving party if the losing party had a "full and fair opportunity to ventilate the issues involved in the matter." *Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003) (quoting *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir. 1982)). There are no genuine issues of material fact that prevent this Court from entering summary judgment for the State Defendants and the Campaign and dismissing this action.

### B.    I-1501 Easily Withstands First Amendment Scrutiny

Freedom Foundation's First Amendment claims revolve around one fundamentally incorrect premise: that I-1501 prevents them from speaking in the manner they so desire. It does not. Freedom Foundation may carry its message to individual providers and others without intervention or regulation. However, what I-1501 does do—like many other public record exemption provisions—is regulate the government's distribution of sensitive personal

information in its possession. Freedom Foundation cites no authority, and the State is aware of none, where a court has recognized a constitutional right to access such information, even where access would provide a requester greater ease in engaging in constitutionally protected activity.

**1. I-1501 Does Not Impede Any Speech**

Freedom Foundation contends that I-1501 suppresses "public issues speech," and therefore should be subject to strict scrutiny. Pls.' Mot. Summ. J. (Dkt. No. 50) at 13. But Freedom Foundation's conclusory statement is not grounded in the actual text of I-1501. In reality, Freedom Foundation asks this Court to require the government to provide a targeted mailing list to assist Freedom Foundation in contacting individual providers. Pls.' Mot. Summ. J. at 14-18. This Court should decline.

As an initial matter, access to government-held information in order to facilitate speech has never been held to be a First Amendment right. *See, e.g.*, *Houchins v. KQED, Inc.*, 438 U.S. 1, 9 (1978). While Freedom Foundation may assert this case is different, Pls.' Mot. Summ. J. at 13 n.4, the State already has shown in its Motion for Summary Judgment why it is not. *See* State's Mot. Summ. J. (Dkt. No. 47) at 4-6, 18-22. "Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control." *Houchins*, 438 U.S. at 15. Further, contrary to Freedom Foundation's suggestion in its footnote, *Houchins* (and the many cases in accord) has never been limited to only those claiming a right of *special* access to government-controlled sources of information. *E.g.*, *McBurney v. Young*, 569 U.S. 221, 232, (2013) ("This Court has repeatedly made clear that there is no constitutional right to obtain all the information provided by FOIA laws."); *Los Angeles Police Dep't v. United Reporting Publ'g. Corp.* (*LAPD*), 528 U.S.

STATE DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:17-CV-05255

4

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

32, 40-41 (1999) (upholding a state law regulating access to information in the possession of a police department, citing *Houchins*). In any event, Freedom Foundation is seeking special access to information beyond that of the public generally based on its intended use of the information. *Houchins* and its progeny control here.

Next, Freedom Foundation asserts that this Court must analyze whether I-1501 impacts its free speech rights in any way. Pls.' Mot. Summ. J. at 13. But neither of its cited cases support that proposition. For example, Freedom Foundation cites to *Bullock v. Carter*, 405 U.S. 134, 144 (1972), but that case concerned excessive candidate filing fees that limited which candidates could access the ballot and thus created economic disparities for both the candidates and voters. Courts have long scrutinized ballot access cases under a unique balancing test not applicable to the circumstances here. *See Bullock*, 405 U.S. at 145; *Anderson v. Celebrezze*, 460 U.S. 780 (1983). And in *Meyer v. Grant*, 486 U.S. 414 (1988), the Court invalidated a state law prohibiting paid petition-signature gatherers. *See* Pls.' Mot. Summ. J. at 13-14. The Supreme Court applied strict scrutiny to the prohibition because the law directly restricted who was able to convey the initiative's message and thereby limited the people's ability to have their voices heard through the initiative process. *Meyer*, 486 U.S. at 424-25. Nowhere, however, does the Court set forth any "impact analysis" for free speech claims, as Freedom Foundation wrongly asserts.

Moreover, Freedom Foundation does not challenge I-1501 in order to avoid statutory restrictions on its ability to speak, but instead challenges the Initiative as a means to require the state to assist its efforts to communicate with individual providers. Its reliance, therefore, on cases where the government restricted some method of communication is greatly misplaced. In *Schneider v. New Jersey, Town of Irvington*, 308 U.S. 147 (1939), and *Martin v. City of Struthers*,

STATE DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:17-CV-05255

5

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

*Ohio*, 319 U.S. 141 (1943), the Court invalidated local laws prohibiting the distribution of handbills or leaflets to the public. *See Schneider*, 308 U.S. at 154-59 (criminalizing the distribution of literature in certain public places or streets); *Martin*, 319 U.S. at 142 (prohibiting the ringing of a doorbell or otherwise reaching out to residents in order to distribute literature). The Court found these ordinances impermissible because they explicitly restricted the public's right to communicate information and opinion without government interference. *See Schneider*, 308 U.S. at 163; *Martin*, 319 U.S. at 146-47. In other words, in each of these cases, the laws were invalid under the First Amendment because the government censored citizens' speech by directly prohibiting particular methods of communications. *Accord City of Ladue v. Gilleo*, 512 U.S. 43 (1994) (invalidating ordinance prohibiting homeowners from displaying certain signs on their property).

Here, by enacting I-1501, the people of the State of Washington have done no such thing. I-1501 does not prohibit or even regulate any form of communication used by Freedom Foundation or anyone else. Rather, by its plain language, I-1501 regulates the government's conduct with respect to releasing certain sensitive information in its possession and correspondingly limits public access to that government-held information. *See* Gonick Decl. (Dkt. 47-1), Ex. A § 8 (codified as Wash. Rev. Code § 42.56.640); *See* Gonick Decl., Ex. A §§ 10, 11 (codified as Wash. Rev. Code § 42.56.645, Wash. Rev. Code § 43.17.410). Certain vulnerable individuals and their in-home caregivers must necessarily give the state their personal information to obtain government benefits or receive payment for providing such services. I-1501 merely exempts from public disclosure the sensitive, personally identifying information of

STATE DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:17-CV-05255

6

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

these individuals, including their names and addresses, held in the government's possession. *See* Wash. Rev. Code § 42.56.640.

It would be a different story if I-1501 actually regulated a method of communication, for example by barring anyone who has access to the contact information from sending mailers out. But it does not. Unlike the laws in *Meyer*, *Schneider*, and *Martin*, nothing in I-1501 prohibits or regulates any form of speech concerning these vulnerable individuals or their caregivers. Any person or entity wishing to contact or communicate with such individuals may do so in whatever manner they desire. Freedom Foundation spends many pages supporting its assertion that targeted mailings are the most effective means of communicating its intended message to individual providers. *See, e.g.*, Pls.' Mot. Summ. J. at 8-9, 17-18. Yet nothing in I-1501 prevents them from using such mailings to contact providers. If they should come upon providers' contact information in the public arena, they are free to use that information as they choose. *See LAPD*, 528 U.S. at 40, 42 (Ginsburg, J., concurring) (public records statute would not prohibit a speaker from conveying information already possessed). I-1501 only restricts the state from handing over the sensitive personal information to the public, including Freedom Foundation. It does not restrict any method of communication.

Finally, Freedom Foundation suggests that the First Amendment requires the State to "inform Plaintiffs of the identity of their audience." Pls.' Mot. Summ. J. at 17. Freedom Foundation cites no authority for this extraordinary proposition, and relies instead on the inapt hypothetical analogies of the government cutting off access to a neighborhood or street to public communications. *Id.* But as already discussed, I-1501 does not impose any restriction on Freedom Foundation's communication with its intended audience. More importantly, no

STATE DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:17-CV-05255

7

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

authority suggests that the First Amendment requires the government to assist in its efforts simply because it would be more convenient or cost effective for Freedom Foundation. *Cf. Regan v. Taxation With Representation of Wash.*, 461 U.S. 540, 549-50 (1983) ("a legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right").

### 2. I-1501 Does Not Impede Any Right to Receive Information

For these same reasons, Freedom Foundation's contention that I-1501 impairs individual providers' right to receive information is equally inapt. Pls.' Mot. Summ. J. at 19-20. The State does not dispute that the corollary to freedom of speech is the right to receive information. *E.g.*, *Bd. of Educ., Island Trees Union Free Sch. Dist. 26 v. Pico*, 457 U.S. 853, 867 (1982). But just as I-1501 does not restrict any form of speech by Freedom Foundation, it does not restrict individual providers' ability to receive Freedom Foundation's message.

Just as it does with its speech claims, Freedom Foundation relies on a series of cases in which the government restricted a means of communication to a particular audience. Pls.' Mot. Summ. J. at 19. For instance, in *Thomas v. Collins*, 323 U.S. 516 (1945), the state law at issue prohibited soliciting members for union organization without first obtaining government permission to do so. In *Stanley v. Georgia*, 394 U.S. 557 (1969), the law prohibited possession of "obscene materials," of which the Court held that the individual prosecuted had a right to receive and review in his own home. And *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367 (1969), is especially off point because it concerns a federal regulation requiring private broadcasters to share their radio band waves in certain circumstances. The Court rejected the broadcasters' free speech claims, finding it "unquestioned" that Congress could regulate the use of the radio waves because "the First Amendment confers no right on licensees to prevent others

STATE DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:17-CV-05255

8

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

from broadcasting on 'their' frequencies and no right to an unconditional monopoly of a scarce resource which the Government has denied others the right to use." *Red Lion Broad. Co.*, 395 U.S. at 391.

Unlike the government or the broadcasters in these cases, the people here through I-1501 have not substituted their judgment for that of caregivers as to what they hear or to whom they should listen. Nothing in I-1501 actually prevents caregivers from hearing Freedom Foundation's message and deciding for themselves whether it is something they actually want to hear. Indeed, the Supreme Court addressed this exact argument in *Houchins*: "The right to *receive* ideas and information is not the issue in this case. . . . Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control." *Houchins,* 438 U.S. at 12, 15 (emphasis in original). In *Houchins*, the Supreme Court was untroubled by the limited access to inmates and noted inmates and their attorneys could always reach out to the requestor of information if they wanted to engage in First Amendment activity. *Id.* at 15; *see also Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 935 (D.C. Cir. 2003) (holding First Amendment did not apply to denial of access to public records in FOIA request and noting that September 11 detainees "are free to contact family members as well as members of the press"). Like the inmates in *Houchins* and detainees in *Center. for National Security Studies*, in-home care providers are free to reach out to Freedom Foundation and communicate with them without restriction.

STATE DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:17-CV-05255

9

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

### 3. I-1501 Is Not Facially Overbroad

To succeed with its facial claim, Freedom Foundation must "establish that no set of circumstances exists under which [I-1501] would be valid, or that the statute lacks any plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 472 (2010) (citation omitted) (internal quotation marks omitted). Further, in the First Amendment context, "a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* at 473 (internal quotation marks omitted) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008)). This doctrine however will not be applied if the plaintiff fails to describe the statute's overbreadth, *Wash. State Grange*, 552 U.S. at 449 n.6, and even then the doctrine is to be used "sparingly" and "only as a last resort." *N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988); *see also United States v. Williams*, 553 U.S. 285, 293 (2008) ("Invalidation for overbreadth is strong medicine that is not to be casually employed." (Internal quotation marks omitted.)). The court must construe I-1501 as it is written—not as Freedom Foundation contends—because only then can the Court determine whether the initiative actually reaches "too far" in prohibiting any expressive activity. *See Williams*, 553 U.S. at 293.

The Supreme Court has already rejected a facial attack to a state law akin to I-1501 that granted only qualifying persons access to certain information in the possession of the government. *See LAPD*, 528 U.S. at 40. The Court in *LAPD* found, "[f]or purposes of assessing the propriety of a facial invalidation, what we have before us is nothing more than a governmental denial of access to information in its possession. California could decide not to give out arrestee information at all without violating the First Amendment." *Id.* at 40. Here, like

STATE DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:17-CV-05255

10

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

the law at issue in *LAPD*, I-1501 does no more on its face than deny access to government-held information to non-qualifying persons. It too should be upheld facially "because there is '[no] possibility that protected speech will be muted.'" *See id.* at 41 (alteration in original).

Freedom Foundation nevertheless ignores *LAPD* and the actual text of I-1501 to rely instead on a series of irrelevant cases for its purported facial attack. Freedom Foundation first argues that the Court in *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750 (1988), facially invalidated the ordinance at issue because it created "highly burdensome licensing requirements" that targeted a form of speech: circulation of newspapers. Pls.' Mot. Summ. J. at 20. Not so. The Court explicitly left unanswered the question of whether the City could ban outright the placement of newsracks on public property. *City of Lakewood*, 486 U.S. at 762 n.7. Instead, the Court invalidated the law because it gave city officials unbridled discretion regarding which newspapers would be licensed to install newsracks, creating an impermissible scheme in which newspapers might self-censor in order to avoid being denied a license and content-based censorship would be difficult to detect. *Id.* at 759. Here, there is no such unbridled discretion: I-1501 is clear about what information is exempt and what is not.

Freedom Foundation also erroneously cites *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706-07 (1986), as a facial challenge. In that case, the Court upheld the closure of a bookstore that served as a front for prostitution, finding that First Amendment scrutiny did not apply even though the closure would have "some effect on the First Amendment activities of those subject to the sanction." *Arcara*, 478 U.S. at 706-07 (specifically distinguishing general purpose statutes that may have an incidental impact on expressive activities from laws that specifically target and inevitably restrict speech). At no point did the Court apply any overbreadth analysis to the laws

STATE DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:17-CV-05255

11

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

at issue. Same too with *Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*, 460 U.S. 575 (1983). In that case, the Court struck down a special use tax because it singled out the press and targeted small newspapers. *Id.*, at 591-92. And like in *City of Lakewood*, the Court found the law impermissible because it operated "effectively as a censor" on the newspapers targeted by the tax. *Id.* at 585. Here, the plain text of I-1501 neither targets nor singles out Freedom Foundation. *See* Gonick Decl., Ex. A. The public has no more access to the personal information of vulnerable individuals and their providers than does Freedom Foundation. Gonick Decl., Ex. A.

Finally, while Freedom Foundation asserts in a single sentence that the Initiative "eliminates Plaintiffs' abilities to engage in constitutionally protected expressive activities," Pls.' Mot. Summ. J. at 20, the State has already shown that this statement is not true. I-1501 does not prohibit or limit *any* expressive activity. *See also* State's Mot. Summ. J. at 4-7, 18-19. Freedom Foundation has not carried its "heavy burden of persuasion" to show that I-1501 is unconstitutional in a substantial number, or even some, of its applications. *See Wash. State Grange*, 552 U.S. at 449. Its claim of facial overbreadth fails.

### 4. I-1501 Furthers an Important Government Interest Unrelated to the Regulation of Free Expression

I-1501 does not target or regulate any speech, and therefore the First Amendment does not apply. But even if this Court were to find that I-1501 has some impact on speech, it would not be subject to strict scrutiny as Freedom Foundation erroneously contends. *See* Pls.' Mot. Summ. J. at 13-14. Instead, as a facially-neutral law that regulates only conduct in the form of the government's release of information, the law need only further an important government interest unrelated to the regulation of free expression and have an incidental restriction on speech

STATE DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:17-CV-05255

12

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

that is no greater than is essential to further the government's interest. *See United States v. O'Brien*, 391 U.S. 367, 376-77 (1968). And I-1501 does. The people enacted the law to protect vulnerable individuals and their in-home care providers from victimization. Relatedly, the law also furthers the important government interest in protecting the privacy of vulnerable individuals and their caregivers who rely on the State for assistance. Moreover, requiring government agencies to disclose this information to anyone who asserts a desire to contact this particular group of people would entirely defeat the law's purpose. Thus, preventing disclosure of the information is no greater than is essential to further the government's interest. Restricting the State from disclosing their sensitive, personally identifying information certainly furthers the State's important interests and has only an incidental effect on free expression, if it has any impact at all. Freedom Foundation's First Amendment claims fail.

## C. I-1501's Public Records Act Provisions Do Not Regulate Any First Amendment Associational Rights or Activities

Freedom Foundation's First Amendment freedom of association claim also is without merit. The same distinction between access to government information and First Amendment speech rights applies. I-1501 is a public records law. It does not regulate Freedom Foundation's behavior or activities in any way. As the free speech cases cited above make clear, that Freedom Foundation may use government information for protected First Amendment activity does not create a First Amendment right to obtain that government information. The same is true for freedom of association.

The First Amendment association right arises in two contexts: (1) "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State" and (2) "a right to associate for the purpose of engaging in those activities protected

STATE DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:17-CV-05255

13

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties." *IDK, Inc. v. Clark Cty*., 836 F.2d 1185, 1191-92 (9th Cir. 1988) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984)). Freedom Foundation does not assert an intimate human relationship that requires protection. As to preserving other individual liberties, freedom of association prohibits government regulation of actual associational conduct, such as "intrusion into the internal structure or affairs of an association," like a "regulation that forces the group to accept members it does not desire;" compelled disclosure of affiliation with groups engaged in advocacy; imposition of liability on an individual solely because of his or her association with another; or infringing on the right of people to gather together in public places for social or political purposes. *Roberts*, 468 U.S. at 623; *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958); *NAACP v. Claiborne Hardware Co*., 458 U.S. 886, 918-19 (1982); *Coates v. City of Cincinnati*, 402 U.S. 611, 615 (1971). Freedom Foundation points to no provision of I-1501 that regulates such associational conduct. Nor could it. I-1501 regulates government conduct only.

Further, none of the cases Freedom Foundation cites stand for the proposition that a limitation on the ability to obtain government information implicates freedom of association. Instead, consistent with the above, all involve state regulation of actual associational conduct. *Williams v. Rhodes*, 393 U.S. 23 (1968), and *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214 (1989), both involved state laws that regulated political parties' internal activities. In *Williams*, the law imposed several "very restrictive" requirements on political parties who wished to place candidates on primary ballots. *Williams*, 393 U.S. at 24-25, 32. The

STATE DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:17-CV-05255

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

requirements included electing a state central committee with two members from each district and county central committees for each county in Ohio. *Id.* at 25 n.1. In *Eu*, the "heavy" regulations included barring the political parties from endorsing or opposing candidates, as well as restrictions on the organization and composition of the parties' official governing bodies. *Eu*, 489 U.S. at 224, 230. The Supreme Court invalidated these laws based on the First Amendment because they diminished and sought to control the way political parties could associate to advance their political goals, *Williams*, 393 U.S. at 31-33, and organize themselves, conduct their affairs, and select their leaders. *Eu*, 489 U.S. at 224, 230, 233. In both cases, the laws interfered with the actual, internal conduct of the political associations. Neither involved, nor even suggested, there is a right to obtain government information in order to further potential First Amendment activity.

The same is true for the other two cases Freedom Foundation cites, *Thomas v. Collins*, 323 U.S. 516 (1945), and *State Employee. Bargaining Agent Coalition v. Rowland*, 718 F.3d 126 (2d Cir. 2013). Both involved unconstitutional penalties based on individual choices to engage in associational conduct. In *Thomas*, Texas law required union organizers to obtain an "organizer's card," essentially a license, before soliciting new members. *Thomas*, 323 U.S. at 518. A union president, Thomas, went to Houston solely to attend and speak at a meeting for plant employees to help an affiliate union organize them. *Id.* at 521. After arriving in Houston, because he had not obtained the state license, Thomas received a restraining order to stop him from speaking, but he spoke anyway, leading to his arrest, a contempt judgment, jail time, and a fine. *Id.* at 521-24. The Supreme Court held the license law violated the First Amendment

STATE DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:17-CV-05255

15

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

because it placed a prior restraint and criminal penalty on the speaker's First Amendment conduct. *See id.* at 540-41.

A similar situation was at issue in *Rowland*. In that case, state officials advised state employees and their unions that the state would fire unionized employees if the unions and employees did not agree to certain collective bargaining agreement concessions. *Rowland*, 718 F.3d at 130. After the unions and employees refused, the state fired 2,800 unionized employees, but not non-union workers. *Id.* The Second Circuit concluded this state action of "[c]onditioning public employment on union membership . . . inhibits protected association and interferes with government employees' freedom to associate." *Id.* at 133. That is, the state action was unconstitutional because it penalized the actual conduct of persons depending on whether they to associate with the union. Again, the unconstitutional state action was premised on whether individuals engaged in particular associational conduct and did not involve a right to obtain government information.

Like with its free speech claims, Freedom Foundation's position would create an absolute right to public information depending on the requestor's purported use of the information. As argued in the State Defendants' and Campaign's motions for summary judgment, such a result is incompatible with controlling case law and would create the absurd result that there is always a First Amendment right to receive government information.

Freedom Foundation's association claim fails as a matter of law.[1]

---

[1] The Freedom Foundation has not brought forth a class action and does not represent all of the caregivers in this lawsuit, thus Freedom Foundation's assertion regarding the association rights of all of the caregivers is not properly before this Court. *See* Pls.' Mot. Summ. J. at 21; *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (noting federal jurisdiction generally will not be warranted where a party asserts a generalized grievance on behalf of all or a large class of citizens, nor where a party asserts the legal rights or interests of third parties).

STATE DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:17-CV-05255

16

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

**D.      I-1501 Does Not Unequally Burden Speech In Violation of the Equal Protection Clause**

Freedom Foundation's Equal Protection claim fails because it is based on the incorrect premise that I-1501 burdens speech. Freedom Foundation asserts a rule that: "Laws imposing unequal burdens on speech about public issues are presumptively unconstitutional, without any evidence that animus motivated the unequal burdens." Pls.' Mot. Summ. J. at 21. But I-1501 does not burden speech at all, either equally or unequally. To the contrary, as argued above, I-1501 is a law that regulates the state's provision of information, not a law that implicates First Amendment rights.

The cases Freedom Foundation relies on, *Police Department of Chicago v. Mosely*, 408 U.S. 92 (1972), and *Carey v. Brown*, 447 U.S. 455 (1980), are inapposite. Pls.' Mot. Summ. J. at 21-22. Initially, neither case addresses the issue here: access to government records that a requester wishes to use to facilitate speech. Nor does either case state that differentiated access to government records represents unequal treatment that violates the Equal Protection clause. Moreover, fundamentally, both cases are inapposite because, unlike I-1501, the laws at issue in *Mosley* and *Carey* directly prohibited a highly protected method of speech in public forums and based on the message being conveyed.

The laws in *Carey and Mosley* prohibited picketing—an exercise of "basic constitutional rights in their most pristine and classic form"—in public forums, which are "places [ ] so historically associated with the exercise of First Amendment rights that access to them for the purpose of exercising such rights cannot constitutionally be denied broadly and absolutely."

*Carey*, 447 U.S. at 458, 460, 466-67 (citations omitted) (internal quotation marks omitted); *Mosley*, 408 U.S. at 94-96 (analyzing the restricted area as a "public place" and "public forum" throughout). Most concerning, the laws restricted picketing based on the nature of the message being conveyed—allowing only peaceful picketing related to labor disputes in each instance, but prohibiting picketing on any other subject. Thus, the laws directly burdened protected speech activities in public forums based on the content of the speech. *Mosley*, 408 U.S. at 95 ("The central problem with Chicago's ordinance is that it describes permissible picketing in terms of its subject matter."); *Carey*, 447 U.S. at 460-62 ("The permissibility of residential picketing under the Illinois statute is thus dependent solely on the nature of the message being conveyed. . . . [I]t is the content of the speech that determines whether it is within or without the statute's blunt prohibition."). These cases involve classic examples of impermissible content-based speech regulation.

Here, I-1501 contains no burden on speech, much less one that discriminates based on the content of speech. There is no provision of the law that permits access to caregiver information for certain types of speech, but not others. As the State and Campaign have pointed out, I-1501's PRA provisions apply regardless of the viewpoint or message those who seek to use the caretakers' information might hold or wish to convey. *See* State's Mot. Summ. J. at 7-8; Campaign's Mot. Summ. J. at 21-22. To the extent Freedom Foundation believes certified bargaining units are using contact information of caregivers for improper speech purposes, that claim is not part of this case and would be unrelated to I-1501 itself. Because I-1501 does not burden actual speech and contains no content-based distinction between types of speech, Freedom Foundation's Equal Protection claim fails.

**E.     Freedom Foundation Fails to Establish That Washington Voters Enacted I-1501 Out of Animus**

As detailed in the State's and Campaign's motions for summary judgment, to evaluate animus motivations behind a law, courts review the law itself and the intent of the law's enactors. *see* State's Mot. Summ. J. at 12, 15-18; Campaign's Mot. Summ. J. at 18-20. This remains the case where, as with I-1501, the voters are the enactors. *See Romer v. Evans*, 517 U.S. 620, 632-35 (1996) (examining plain text to find animus); *Crawford v. Bd. of Educ. of City of Los Angeles*, 458 U.S. 527, 543-45 (1982) (looking to intent of "voters of the State" and deferring to state court's finding that the "claim of discriminatory intent on the part of millions of voters [is] but 'pure speculation'").[2] Although statements of ballot measure sponsors may be relevant, as Freedom Foundation claims, ultimately it still is the intent of the enactors of the law—the voters themselves—that must be rooted in animus. Thus, initially, even assuming that I-1501's supporters acted with animus in proposing and supporting the law, Freedom Foundation's animus claim fails because they do not allege in their Complaint (Dkt. No. 1) or their Motion that Washington voters acted with animus when enacting I-1501.

Regardless, Freedom Foundation fails to establish that the Campaign and supporters' statements or communications impute a primary motivating sentiment of animus to the voters. Freedom Foundation cites to a carefully culled set of communications that mention Freedom Foundation. Pls' Mot. Summ. J. at 9-10. But, as the Campaign explains in its concurrently filed

---

[2] *See also Perry v. Schwarzenegger*, 591 F.3d 1147, 1165 (9th Cir. 2010) (*Perry II*) (holding that internal campaign communications are too "attenuated from the issue of voter intent" to compel their production in case involving animus claim given First Amendment protection of such communications); *cf. McGowan v. State*, 148 Wash. 2d 278, 288, 60 P.3d 67 (2002) (initiative is interpreted to glean the collective intent of the people who enacted the measure, focusing first on the initiative's plain language); *Brown v. State*, 155 Wash. 2d 254, 268, 119 P.3d 341 (2005) (initiatives are interpreted as written, and the court will turn to extrinsic sources like the voter's pamphlet only if an initiative is ambiguous).

STATE DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:17-CV-05255

19

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

joinder, these were not campaign messages distributed to the general public. Campaign communications distributed to voters in general make no mention of Freedom Foundation and advocate for the protection of vulnerable populations from financial exploitation crimes and their caregivers' privacy. This is entirely consistent with the text of I-1501, the ballot title, and the Voters' Guide—the only things presented to all voters when making the choice to vote on I-1501. *See generally* Gonick Decl., Ex. B (ballot title and Voters' Guide).

Additionally, even if voters saw or were aware of these communications mentioning Freedom Foundation, a discriminatory purpose implies more than intent as volition or intent as awareness of consequences, it implies that the decision maker selected a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group. *Stop H-3 Ass'n v. Dole*, 870 F.2d 1419, 1432 (9th Cir. 1989) (internal quotation marks omitted). None of these communications supports a conclusion that the over 70% of Washington voters who approved I-1501 did so out of animus toward Freedom Foundation. Or that endorsers of I-1501, such as King County Sheriff John Urquhart, the Washington State Democrats, the Statewide Poverty Action Network, and the Washington State Senior Citizens' Lobby, did so out of a desire to harm Freedom Foundation.[3]

---

[3] The Freedom Foundation presents no authority that holds the intent of supporters of a law is a determinative factor in an animus analysis. Indeed, in the limited contexts where courts even consider the comments or motivations of a law's supporters, they do so only to seek information about the intent of the law's enacting body. *See, e.g.*, *Perry II*, 591 F.3d at 1164 (concluding discovery into a campaign's purposes and communications related to a ballot measure "might [have] help[ed] to identify messages actually conveyed to voters," but were not highly relevant to animus claims); *Seattle Sch. Dist. 1 v. State*, 473 F. Supp. 996, 1007-10 (W.D. Wash. 1979), *aff'd sub nom. Washington v. Seattle Sch. Dist. 1*, 458 U.S. 457 (1982) (limiting review of initiative-campaign's materials for animus to conveyances to voters, including the campaign slogan, the official Voter's Pamphlet, media coverage and publicity, content of speeches before the election, and the campaign's publically published legal analysis of the initiative); *cf. City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 195, 197 (2003) (party failed to show city officials "exercised any power over voters' decisionmaking . . . much less the kind of 'coercive power' either 'overt or covert' that would render the voters' actions and statements, for all intents and purposes, state action").

STATE DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:17-CV-05255

20

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

The authority Freedom Foundation relies on is inapposite. Several of their cases present policies that had no explanation other than animus. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 450 (1985) (finding animus where all non-discriminatory justifications for the law were nonsensical); *Romer*, 517 U.S. at 635 (holding breadth of Colorado law so far removed from justifications it was impossible to credit them and law could only be explained by animus); *Fowler Packing Co. v. Lanier*, 844 F.3d 809, 815-816, 819 (9th Cir. 2016) (applying rational basis review, but finding no legitimate rationale for a provision of a law that specifically carved three employers out of a safe harbor provision); *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 537-38 (1973) (concluding classifications made in an amendment not related to legitimate government interest where act already contained provisions addressing crime the amendment claimed to prevent). The same is not true here.

Under rational basis review, as is appropriate here, courts uphold laws if they can "imagine any conceivable basis supporting a law, even if not advanced by the government." *Fowler Packing Co.*, 844 F.3d at 815 n.3. Here, the Court need not go to its imagination to find a rational basis for I-1501. As the State and Campaign have described, the Initiative has a legitimate public purpose. By protecting the confidentiality of in-home caregivers' identifying information, I-1501 is reasonably aimed to protect against identity theft and the invasion of privacy for caregivers as well as the vulnerable populations they serve. *See* State's Mot. Summ. J. at 13-15; Campaign's Mot. Summ. J. at 20-21. This makes sense and is consistent with numerous laws that seek to protect personal contact information for privacy reasons. *See* Campaign's Br. at 3-4, 11. That there has not been evidence of actual crimes committed against caregivers is irrelevant. There need be only a conceivable basis for supporting the law. And laws

STATE DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:17-CV-05255

21

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

that advance legitimate interests are generally sustained even where the rationale is a potential, though yet unestablished, improvement. *See, e.g.*, *Ry. Express Agency, Inc. v. New York*, 336 U.S. 106, 110 (1949) (potential traffic hazards justified exemption of vehicles advertising the owner's products from general advertising ban); *Kotch v. Bd. of River Port Pilot Comm'rs for Port of New Orleans*, 330 U.S. 552, 562-63 (1947) (licensing scheme that disfavored persons unrelated to current river boat pilots justified by possible efficiency and safety benefits of a closely knit pilotage system).

The remaining authority on which Freedom Foundation relies is inapposite because the cases involve racial discrimination, a classification necessitating heightened examination. *See Washington v. Seattle Sch. Dist. 1*, 458 U.S. 457, 470 (1982); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-71 (1977); *Washington v. Davis*, 426 U.S. 229, 245-48 (1976); *City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 195 (2003). Racial distinctions in the law are "inherently suspect," and require a particular, "sensitive" analysis. *Seattle Sch. Dist. 1*, 458 U.S. at 485, 470 (stating a "different analysis is required when the State allocates governmental power nonneutrally, by explicitly using the *racial* nature of a decision to determine the decision making process"); *Vill. of Arlington Heights*, 429 U.S. at 265-66 (stating "racial discrimination is not just another competing consideration"). This is because the "central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." *Davis*, 426 U.S. at 239. As Freedom Foundation has already conceded, I-1501 does not employ a suspect classification (Compl. ¶ 109), like a racial distinction, and therefore does not necessitate the type of review these cases set out.

STATE DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:17-CV-05255

22

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

Finally, contrary to Freedom Foundation's assertion and as explained in the State Defendants' and Campaign's motions for summary judgment, continuing to permit duly-elected, certified bargaining representatives to receive caregiver contact information has a rational basis completely unrelated to political speech. Certified unions have a long-standing right to access the contact information for those they represent in order to fulfill their statutory duties of fair representation and collective bargaining. *See* State's Mot. Summ. J. at 8; Campaign's Mot. Summ. J. at 15-17 (citing authority illustrating unions' unique status and need for contact information). Given this right, I-1501's Public Records Act exception for certified collective bargaining representatives has a legitimate purpose and rational basis that does not violate the Equal Protection Clause.

## IV.    CONCLUSION

The people of Washington enacted I-1501 to protect sensitive personal information of vulnerable adults and their in-home care providers in the government's possession. Freedom Foundation failed to overcome the validity of this law. Its motion for summary judgment should be denied and no award of attorney fees should be granted under 29 U.S.C. § 1988 because Freedom Foundation is not a prevailing party. Summary judgment should instead be granted to Defendants and the matter dismissed.

DATED this 6th day of August 2018.

ROBERT W. FERGUSON
    *Attorney General*

s/*Peter B. Gonick*                          PO Box 40100
PETER B. GONICK, WSBA 25616          Olympia, WA 98504-0100
s/ *Callie A. Castill*                       360-753-6200
CALLIE A. CASTILLO, WSBA 38214       peterg@atg.wa.gov
    *Deputy Solicitors General*          calliec@atg.wa.gov

STATE DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:17-CV-05255

23

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

## CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, that I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court of the United States District Court Western District Of Washington by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED this 6th day of August 2018.


s/ *Stephanie N. Lindey*
STEPHANIE N. LINDEY
*Legal Secretary*

STATE DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT
NO. 3:17-CV-05255

24

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200